UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANGELA HAMMAN,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CASE NO. 3:18-CV-05725-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's application for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when he failed to provide specific, legitimate reasons to reject medical opinion evidence from Drs. T. Ted Song, D.O., and John T. Verrilli, M.D. Had the ALJ properly considered these medical opinions from Plaintiff's treating physicians, the residual functional capacity ("RFC") may have included additional limitations. The ALJ's error is therefore not harmless, and this

matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Social Security Commissioner ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

On March 2, 2015, Plaintiff filed an application for SSI, alleging disability as of October 14, 1999. *See* Dkt. 8 Administrative Record ("AR") 25. The application was denied upon initial administrative review and on reconsideration. *See* AR 25. ALJ Allen G. Erickson held a hearing on May 2, 2017. AR 51-99. In a decision dated October 25, 2017, the ALJ determined Plaintiff to be not disabled. AR 22-48. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-6; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by failing to: (1) find her back pain and headaches were severe impairments at Step Two; (2) properly assess medical opinion evidence from treating physicians Drs. Song and Verrilli, and non-examining physician Dr. Norman Staley, M.D.; and (3) provide clear and convincing reasons to reject Plaintiff's subjective symptom testimony. Dkt. 10, pp. 3-18. Plaintiff requests, due to these alleged errors, the Court remand this matter for an award of benefits. *Id.* at 18.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

# DISCUSSION

## I. Whether the ALJ properly found Plaintiff's back pain and headaches were non-severe impairments at Step Two.

Plaintiff contends the ALJ erred when he found Plaintiff's back pain and migraines non-severe at Step Two the sequential evaluation process. Dkt. 10, pp. 12-15.

Step Two of the Social Security Administration's ("SSA's") evaluation process requires the ALJ to determine whether the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(ii) (2012). An impairment is "not severe if it does not significantly limit" the ability to conduct basic work activities. 20 C.F.R. § 416.922(a) (effective Mar. 27, 2017). "Basic work activities are abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Smolen*, 80 F.3d at 1290 (citation and quotation marks omitted). An impairment or combination of impairments "can be found 'not severe' only if the evidence establishes a slight abnormality having 'no more than a minimal effect on an individual[']s ability to work.'" *Id.* (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting Social Security Ruling ("SSR") 85-28)).

At Step Two, the ALJ found Plaintiff "has the following severe impairments: asthma, obesity, major depressive disorder, and generalized anxiety disorder[.]" AR 27. The ALJ also wrote at Step Two that Plaintiff has "complained of tailbone pain, low back pain, [and] thoracic pain[.]" AR 28. But the ALJ found Plaintiff's back pain non-severe at Step Two due to "unremarkable" imaging studies and examinations of Plaintiff's back and spine, and evidence showing trigger point injections resolved Plaintiff's tailbone pain. *See* AR 28. Further, the ALJ found Plaintiff's migraines non-severe in light of unremarkable imaging, Plaintiff's reports to

physicians that she was doing well with her migraines, and because the record shows her migraines are reasonably controlled with medication. AR 28.

To support her assertion that the ALJ erred in failing to find her back pain severe, Plaintiff points to evidence in the record showing diagnoses – such as coccydynia[1] and lumbosacral radiculopathy – related to the spine, spinal imaging and examinations, and Plaintiff's reports of pain. *See* Dkt. 10, pp. 12-14. The evidence Plaintiff cited, however, does not indicate what further limitations, if any, would have been included in the RFC had the ALJ found Plaintiff's back pain to be a severe impairment. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an error is harmless if it is inconsequential" to the ALJ's "ultimate nondisability determination"). The Court's review of the record likewise does not reveal such evidence.

Regarding migraines, Plaintiff argues the ALJ failed to fully and fairly develop the record as to Plaintiff's migraines in light of two medical records and Plaintiff's testimony that she experiences migraines. *See* Dkt. 10, pp. 14-15. Although the ALJ has a duty to develop the record if the record is ambiguous or inadequate, the record here was neither ambiguous nor inadequate such that the ALJ could not properly evaluate Plaintiff's migraines. Rather, the record allowed the ALJ to rationally determine Plaintiff's migraines were non-severe. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (citation omitted) ("[i]f the evidence admits of more than one rational interpretation," the ALJ's decision must be upheld). For example, the ALJ accurately noted that in February 2017, Plaintiff reported to a treating physician "she had been doing very well in terms of her migraines[.]" AR 28; *see also* AR 1099 (physician's report). Furthermore, Plaintiff fails to explain how the record shows Plaintiff is more limited in her

---

[1] Coccydynia is pain in the small bone located at the end of the spine's vertebral column. *See* STEADMAN'S MEDICAL DICTIONARY 186300, 186230 (2014).

ability to conduct basic work activities due to her migraines than what the ALJ accounted for in the RFC. *See* Dkt. 10, pp. 14-15. The Court's review of these records also does not reveal such harmful error. *See, e.g.*, AR 90, 1099-1100, 1117.

Hence, Plaintiff failed to demonstrate the ALJ committed harmful error regarding her back pain or migraines at Step Two. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("The claimant first must bear the burden at . . . step two that [she] has a medically severe impairment or combination of impairments[.]"); *see also Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (holding the ALJ did not err by not classifying an impairment as severe at Step Two because "the medical record does not establish any work-related limitations as a result of this impairment").

**II.     Whether the ALJ properly assessed the medical opinion evidence.**

Plaintiff challenges the ALJ's treatment of medical opinion evidence from treating physicians, Drs. Song and Verrilli, and non-examining physician Dr. Staley. Dkt. 10, pp. 3-12.

An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

A. Dr. Song

Plaintiff asserts the ALJ failed to provide any specific, legitimate reason to reject opinion evidence from Dr. Song. Dkt. 10, pp. 3-11. Dr. Song, a physician who works at an allergy and asthma clinic, has been treating Plaintiff for her asthma and allergic rhinitis since May 2010. *See* AR 913; *see also, e.g.*, AR 711-14, 2082-85 (treatment notes). In an opinion rendered April 27, 2016, Dr. Song noted Plaintiff has "severe persistent asthma and perennial allergic rhinitis." AR 913.[2] Dr. Song wrote Plaintiff's "severe asthma . . . has been refractory to multiple medications." AR 913. Dr. Song observed Plaintiff's asthma "has required multiple emergency visits and inpatient hospitalization for her asthma," and Plaintiff "had severe asthma exacerbation requiring ventilation and was treated in the intensive care unit." AR 913. Moreover, Dr. Song noted he has treated Plaintiff with "special medicine such as Xolair," which "is an injectable biological medication that is only reserved for patients with severe asthma." AR 913. Dr. Song found that on Xolair, Plaintiff's "asthma has been stable yet she gets frequent asthma flares throughout the year." AR 913.

Regarding the functional limitations caused by Plaintiff's severe asthma, Dr. Song opined Plaintiff cannot "walk more than 200 feet before she has to stop to catch her breath." AR 913. Dr. Song determined if Plaintiff "carries more than 10 pounds and has to walk, she will have to stop frequently due to shortness of breath and wheezing." AR 913. Dr. Song anticipated Plaintiff "will need emergency room visits and hospitalization in the future as well. This will most likely limit her ability to maintain a full time employment." AR 913.

The ALJ gave "little weight" to Dr. Song's opinion for three reasons: (1) because the opinion does not reflect Plaintiff's condition when she follows treatment and is not exposed to

---

[2] Dr. Song's April 27, 2016 opinion appears multiple times in administrative record. The Court cites the opinion the first time it appears in the record.

pulmonary irritants; (2) due to the opinion's inconsistencies with the medical evidence; and (3) given that, although Dr. Song wrote Plaintiff's asthma required mechanical ventilation and treatment in the intensive care unit, this occurred outside the relevant time period. AR 38-39.

First, the ALJ rejected Dr. Song's medical opinion "because it does not reflect [Plaintiff's] overall condition when she follows recommended treatment and is not exposed to pulmonary irritants." AR 38. An ALJ may discount a physician's opinion which is inadequately supported "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted). Yet an ALJ cannot use a conclusory statement to reject a physician's findings; rather, the ALJ must state his interpretations of the evidence and explain why his interpretations, rather than the physician's interpretations, are correct. *See Embrey*, 849 F.2d at 421-22.

Here, the ALJ failed to explain how Dr. Song's findings are undermined by Plaintiff's condition when she follows treatment and is not exposed to pulmonary irritants. *See* AR 38. The ALJ also failed to cite any evidence in the record to support this finding. *See* AR 38. Thus, the ALJ's bare assertion is not a specific and legitimate reason to reject Dr. Song's opinion. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on the ground that it was contrary to the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

Further, in his opinion, Dr. Song acknowledged that despite Plaintiff's medications, such as the injectable Xolair, Plaintiff still "gets frequent asthma flares throughout the year." AR 913. Accordingly, the ALJ's finding that Dr. Song's opinion is undermined by Plaintiff's condition on treatment overlooks that Dr. Song considered Plaintiff's condition while on treatment. This finding therefore lacks support from substantial evidence in the record, as well. *Kelly v.*

*Berryhill*, 732 Fed. Appx. 558, 561 (9th Cir. 2018) (citing *Trevizo v. Berryhill*, 871 F.3d 664, 676-77 (9th Cir. 2017); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)) (finding error where the ALJ "inappropriately substituted the ALJ's layperson opinion for that of [the] treating physician without any support from other medical opinions").

Second, the ALJ discounted the weight given to Dr. Song's opinion because he found many of the statements in the opinion inconsistent "with the evidence of record during the relevant time period or with the treating record." AR 38. The ALJ explained:

> For example, on December 1, 2015, when the claimant met with pulmonologist Dr. Andrada she reported that her asthma had been well controlled but she was concerned because since the winter was approaching. He provided a sample of Dulera. On January 7, 2016, the claimant reported that her asthma had been controlled by Symbicort but she preferred the Dulera and had been doing even better since using the Dulera. She reported that her asthma was currently stable and well controlled. She reported she was currently able to do activities of daily living without limitations. At that visit, she was restarted on Xolair, which she reported she previously did very well on. Thus, when Dr. Song prepared his letter the claimant had only been prescribed the Xolair for less than 4 months. As such, by the time he wrote his letter, he could have only commented on the effectiveness of the Xolair for less the less than 4 months she was using it during the alleged period of disability.

AR 38 (citation omitted).

In other words, the ALJ found Dr. Song's opinion inconsistent with the record because Plaintiff had only been on the medication Xolair for less than four months. *See* AR 38. The ALJ failed, however, to state why Plaintiff only being on Xolair for four months undermines Dr. Song's opinion. *See* AR 38; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted) ("the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence"). Moreover, as noted above, Dr. Song's opinion reflects that he considered Plaintiff's condition while on Xolair. *See* AR 913.

Although the ALJ failed to directly state his reasoning, his statement suggests he believed Dr. Song may find Plaintiff less limited over time on Xolair. But the ALJ's statement is speculative and fails to consider significant, probative evidence in the record showing Plaintiff continued to experience asthma exacerbations while on Xolair, even after Dr. Song rendered his opinion in April 2016. For instance, Plaintiff resumed Xolair injections to treat her asthma in January 2016. *See* AR 707. One month later, in February 2016, Plaintiff reported to the emergency department for "exacerbating asthma." AR 871. On physical examination, Plaintiff exhibited "decreased" lung sounds on auscultation. AR 878.

On June 16, 2016, two months after Dr. Song rendered his opinion, Plaintiff reported to Dr. Song for another asthma exacerbation. *See* AR 2082-85. In direct contrast with the ALJ's finding, Dr. Song noted Plaintiff "[h]as been getting her Xolair with control of her asthma," but nevertheless "had [an] asthma flare" over the last week, with dyspnea, wheezing, chest tightness, and a cough. *See* AR 2082, 2085. Dr. Song prescribed prednisone to treat Plaintiff's asthma exacerbation. AR 2085.

One month later, on July 16, 2016, Plaintiff reported to the emergency department for another asthma exacerbation. *See* AR 1042. Plaintiff exhibited "minimal expiratory wheezes" on physical examination. AR 1042.

On November 28, 2016, Plaintiff had an appointment at Dr. Song's asthma and allergy clinic with Dr. Jennifer W. Cole, D.O. AR 2078. Dr. Cole noted Plaintiff's last Xolair injection was in September 2016. *See* AR 2078, 2081. At this visit, Dr. Cole approved Plaintiff to begin receiving a Xolair injection once per month. *See* AR 2081.

Dr. Cole examined Plaintiff at the asthma and allergy clinic again on February 8, 2017. AR 2074-78. Dr. Cole noted that, despite receiving her latest Xolair injection on January 31,

2017, Plaintiff was experiencing "wheezing, shortness of breath[,] and cough." AR 2074. Plaintiff reported that, over the last four weeks, she had been short of breath more than once per day and used a rescue inhaler 1-2 times per day. AR 2074. Dr. Cole assessed Plaintiff with "[s]evere persistent asthma that is currently poorly controlled." AR 2077. Dr. Cole noted that although Plaintiff restarted Xolair in the last year and Plaintiff had reported improvement, Plaintiff "continued to need prednisone." AR 2077. On examination, Dr. Cole observed Plaintiff had "mild wheezing on exam" and a pulmonary function test showed a moderate-severe obstruction. AR 2077. Given Plaintiff's symptoms and increased albuterol use, Dr. Cole prescribed prednisone. AR 2077.

Less than one month later, on March 1, 2017, Plaintiff reported to Dr. Verrilli. AR 1103-09. Dr. Verrilli noted Plaintiff's compliance with her medications, including Xolair, "seems good," and Plaintiff's respiratory symptoms had improved since her last appointment with Dr. Verrilli. AR 1103. Nonetheless, Dr. Verrilli observed Plaintiff continued to experience dyspnea and cough, including "shortness of breath with moderate exertion and with exposure to irritants." AR 1103. Furthermore, Dr. Verrilli found Plaintiff's cough "worse with exertion and when exposed to irritants." AR 1103.

In all, the record shows Plaintiff continued to experience asthma exacerbations while on Xolair, even several months after Dr. Song rendered his opinion. Hence, the ALJ's second reason for rejecting Dr. Song's opinion is not legally sufficient, due to the ALJ's lack of reasoning and support from substantial evidence in the record. *See Reddick*, 157 F.3d at 722-23 ("In essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports. His paraphrasing of record material is not entirely accurate regarding the content or tone of the record.")

1          Third, the ALJ rejected Dr. Song's opinion because, although Dr. Song wrote Plaintiff

2 "required mechanical ventilation and treatment in the intensive care unit," this "did not occur

3 during the relevant time period. It appears that this occurred in 1994." AR 38-39. The ALJ noted

4 Plaintiff was not admitted into the hospital for her asthma during the relevant period. AR 39.

5 Once again, however, the ALJ failed to explain how the fact that these occurrences happened

6 outside the relevant period undermines Dr. Song's opinion. The ALJ "merely states" these facts

7 "point toward an adverse conclusion" yet "makes no effort to relate any of these" facts to "the

8 specific medical opinions and findings he rejects." *Embrey,* 849 F.2d at 421. "This approach is

9 inadequate." *Id*

10         Moreover, although the ALJ's assertion suggests Dr. Song's opinion was inaccurate, this

11 inference is unsupported by the record. Dr. Song did not, as the ALJ suggests, write that Plaintiff

12 required these treatments during the relevant time period. Dr. Song's opinion also does not

13 indicate he based his opinion on these past occurrences. Rather, Dr. Song observed:

> She has required multiple oral steroids in the past which has serious adverse effects. In addition, she has required multiple emergency visits and inpatient hospitalization for her asthma. She had severe asthma exacerbation requiring mechanical ventilation and was treated in the intensive care unit.

AR 913. Dr. Song went on to describe Plaintiff's current asthma treatments and the present state

of her asthma. *See* AR 913.

        Hence, the context of Dr. Song's statement shows he was summarizing Plaintiff's past

medical care, including mechanical ventilation and treatment in the intensive care unit. Contrary

to the ALJ's suggestion, Dr. Song did not state Plaintiff was hospitalized during the relevant

period, nor did Dr. Song state he based his opinion on Plaintiff's past asthma hospitalizations.

*See* AR 38-39. Given the ALJ's conclusory reasoning and lack of record support, the Court finds

the ALJ's third reason insufficient to reject Dr. Song's opinion. *See Blakes v. Barnhart*, 331 F.3d

565, 569 (7th Cir. 2003) (citations omitted) ("We require the ALJ to build an accurate and logical bridge from the evidence to [his] conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

For the above stated reasons, the Court finds the ALJ failed to provide a specific, legitimate reason, supported by substantial evidence in the record, to discount Dr. Song's medical opinion. Accordingly, the ALJ erred.

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout*, 454 F.3d at 1055; *see also Molina*, 674 F.3d at 1115. The Ninth Circuit has held "'a reviewing court cannot consider an error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout*, 454 F.3d at 1055-56). The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

In this case, had the ALJ properly considered Dr. Song's opinion, the RFC and hypothetical questions posed to the vocational expert ("VE") may have contained additional limitations. For example, the RFC and hypothetical questions posed to the VE may have provided greater physical limitations given Dr. Song's opinion that Plaintiff cannot walk more than 200 feet before having to stop to catch her breath. *See* AR 913. The RFC and hypothetical questions posed to the VE may have also stated Plaintiff is unable to carry more than 10 pounds

while walking, or may have provided greater absenteeism limitations. *See* AR 913. Because the ultimate disability determination may have changed with proper consideration of Dr. Song's opinion, the ALJ's error is not harmless and requires reversal. The ALJ is directed to re-evaluate Dr. Song's opinion on remand.

B. Dr. Verrilli

Plaintiff contends the ALJ failed to properly consider medical opinion evidence from Dr. Verrilli. Dkt. 10, pp. 11-12. Dr. Verrilli is Plaintiff's treating pulmonologist. *See, e.g.*, AR 483-91 (treatment notes). On December 30, 2015, Dr. Verrilli prepared a "Medical Source Statement of Ability To Do Work-Related Activities," and wrote he last evaluated Plaintiff on May 22, 2015. AR 691-94. Dr. Verrilli noted Plaintiff's diagnoses include asthma, pulmonary hypertension, and esophageal reflux. AR 691. Regarding environmental limitations, Dr. Verrilli opined Plaintiff is limited in her ability to be exposed to fumes, odors, chemicals, and gases. AR 692. Dr. Verrilli noted that, at his last evaluation of Plaintiff in May 2015, Plaintiff experienced shortness of breath "with moderate exertion." AR 694. Further, Dr. Verrilli opined Plaintiff "is severely limited by her lung function and having to rest after walking [approximately] 200 feet." AR 694. Dr. Verrilli found Plaintiff's condition exacerbated by factors such as exercise, cigarette smoke, respiratory irritants, animal dander, and reflux. AR 694. Dr. Verrilli based his opinion on pulmonary function tests, clinical observations of Plaintiff, and his medical judgment. *See* AR 694.

The ALJ gave "some weight" to Dr. Verrilli's opinion, stating:

> The environmental limitations are consistent with the reports in the record and the pulmonary function tests. (1) However, the overall evidence including the exam from May 22, 2015, the pulmonary function test done in May of 2015, and the claimant's response to treatment does not support resting after walking 200 feet. (2) During the office visit on May 22, 2015, there is no mention of a need to rest after walking 200 feet and the claimant reported shortness of breath with

moderate exertion. (3) Further, in January of 2016 when the claimant followed up with Dr. Verrilli she had recently restarted Xolair treatment and had been feeling better on exam, her breathing was unlabored and her lungs had normal breath sounds.

AR 38 (numbering added) (citations omitted).

First, the ALJ rejected Dr. Verrilli's opinion that Plaintiff needs to rest after walking 200 feet because he found the evidence, including Dr. Verrilli's May 2015 examination and pulmonary function test, and Plaintiff's response to treatment, do not support this finding. *See* AR 38. Yet the ALJ's finding is again conclusory, as he failed to explain how Dr. Verrilli's examination, testing, and Plaintiff's response to treatment fail to support this finding. *See* AR 38. Moreover, the May 2015 pulmonary function test revealed findings "consistent with severe obstruction." AR 487. At Dr. Verrilli's May 22, 2015 examination, Dr. Verrilli's physical examination of Plaintiff revealed normal breath sounds but "faint wheezing." AR 489. Additionally, as explained above, the record shows Plaintiff continued to experience asthma exacerbations while on treatment. Therefore, the ALJ's first reason for discounting the weight given to Dr. Verrilli's opinion is not sufficiently specific nor supported by substantial evidence in the record. *See Embrey*, 849 F.2d at 421 (an ALJ errs when he states a medical opinion is contrary to the objective findings without further explanation, "even when the objective factors are listed seriatim"); *see also Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (the Court "cannot affirm . . . 'simply by isolating a specific quantum of supporting evidence,' but 'must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion'").

Second, the ALJ rejected Dr. Verrilli's opinion that Plaintiff needs to rest after walking 200 feet because such a finding is not mentioned in his May 2015 treatment notes, and because at that

visit, Plaintiff reported shortness of breath with moderate exertion. AR 38. Yet the ALJ failed to explain how Dr. Verrilli's lack of reference this limitation in this treatment note undermines the limitation. *See* AR 38; *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review"). The ALJ's finding also overlooks the fact that Dr. Verrilli wrote that he based his Medical Source Statement on pulmonary function tests, clinical observations of Plaintiff, and his medical judgment – *i.e.*, more than just this single treatment note. *See* AR 38, 694. The ALJ likewise failed to explain how the fact that Plaintiff "reported shortness of breath with moderate exertion" contradicts Dr. Verrilli's opinion that Plaintiff needs to rest after walking 200 feet. *See* AR 38. Notably, Dr. Verrilli's treatment note does not define "moderate exertion," and as such, Plaintiff's report is not necessarily inconsistent with Dr. Verrilli's finding. *See* AR 488. In all, this reason from the ALJ is not specific and legitimate nor supported by substantial evidence due to the ALJ's lack of reasoning and record support.

Third, the ALJ discounted Dr. Verrilli's opinion in light of a later treatment note from Dr. Verrilli, in which Plaintiff reported recently restarting Xolair, "feeling better on exam, her breathing was unlabored and her lungs had normal breath sounds." *See* AR 38. While the ALJ described some findings from this later examination and provided citations to the record, he again failed to connect any of these later findings to particular aspects of Dr. Verrilli's December 2015 opinion and explain how the reports contradict one another. *See* AR 38. Further, as described above with respect to Dr. Song's opinion, Plaintiff continued to experience asthma exacerbations throughout 2016 and 2017, even after restarting Xolair. *See, e.g.*, AR 871, 878, 1103, 2074, 2077, 2082, 2085. Accordingly, this conclusion from the ALJ – based on a single record – is not supported by substantial evidence in the record.

The ALJ failed to provide any specific, legitimate reason, supported by substantial evidence in the record, to discount Dr. Verrilli's opinion. Had the ALJ properly considered Dr. Verrilli's opinion, the RFC and hypothetical questions posed to the VE may have contained additional limitations, such as that Plaintiff would need to rest after walking 200 feet. As the ultimate disability decision may have changed, the ALJ's error is not harmless. *See Molina*, 674 F.3d at 1115. The ALJ shall reassess Dr. Verrilli's opinion on remand.

C. <u>Dr. Staley</u>

Plaintiff argues the ALJ gave improper weight to non-examining physician Dr. Staley, "since Dr. Staley did not see any evidence after March 2016, including the opinion of Dr. Song." Dkt. 10, p. 12.

The "opinion of a non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Magallanes*, 881 F.2d at 752). Because proper consideration of the medical opinion evidence from Drs. Song and Verrilli may impact the ALJ's treatment of non-examining physician Dr. Staley, the ALJ is directed to re-evaluate Dr. Staley's opinion as necessary on remand, as well.

**III. Whether the ALJ provided clear and convincing reasons to discount Plaintiff's testimony.**

Plaintiff asserts the ALJ failed to provide any clear and convincing reason to reject Plaintiff's subjective symptom testimony. Dkt. 10, pp. 15-18.

Because Plaintiff will be able to present new evidence and testimony on remand, and because proper consideration of the medical opinion evidence may impact the ALJ's assessment of Plaintiff's subjective symptom testimony, the Court declines to consider whether the ALJ

erred with respect to Plaintiff's testimony. Instead, the ALJ shall reassess Plaintiff's subjective symptom testimony as necessary on remand.

**IV.     Whether an award of benefits is warranted.**

Lastly, Plaintiff contends an award of benefits is warranted because the Medical Vocational Guidelines would mandate a finding of disability if Dr. Song's and Verrilli's opinions, and Plaintiff's testimony, were credited as true. *See* Dkt. 10, p. 18 (citing AR 96-97).

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed[.]" *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, under this "credit-as-true" test, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *see also McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002) (citations omitted).

At the hearing, the ALJ acknowledged that if Plaintiff was limited to the sedentary exertional level, the Medical Vocational Guidelines would mandate a finding of disability. *See* AR 96. Dr. Song and Dr. Verrilli opined to limitations more consistent with sedentary work than light work, which the ALJ found Plaintiff capable of performing. *See* AR 30 (RFC); AR 913 (Dr. Song opining Plaintiff cannot "walk more than 200 feet before she has to stop to catch her

breath"); AR 694 (Dr. Verrilli opining Plaintiff "is severely limited by her lung function and having to rest after walking [approximately] 200 feet"); 20 C.F.R. § 416.967 (sedentary work involves "sitting," and "a certain amount of walking and standing," while light work may require "a good deal of walking or standing").

Nonetheless, Dr. Song's and Dr. Verrilli's opinions conflict with Dr. Staley's opinion. *Compare* AR 913 (Dr. Song's opinion) and AR 691-94 (Dr. Verrilli's opinion) *with* AR 159 (Dr. Staley limiting Plaintiff to light work). The resolution of this conflict is firmly within the province of the ALJ. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (citations omitted) ("The ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity."). Hence, outstanding issues remain regarding the medical opinion evidence. Outstanding issues also remaining regarding Plaintiff's testimony, the RFC, and Plaintiff's ability to perform jobs existing in significant numbers in the national economy.

Thus, the record does not reflect "further administrative proceedings" would serve no "useful purpose." *See Treichler*, 775 F.3d at 1105 (If the record is "uncertain and ambiguous, the proper approach is to remand the case to the agency" for further proceedings.); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities). The Court therefore finds this case does not present the rare circumstance in which an immediate award of benefits is appropriate, and remand for further consideration of this matter is appropriate.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and

this matter is remanded for further administrative proceedings in accordance with the findings contained herein. The Clerk is directed to enter judgment for Plaintiff and close the case.

Dated this 19th day of February, 2019.

_____
David W. Christel
United States Magistrate Judge